**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL ACTION** |
| | : | **NO.  05-62-01** |
| v. | : | |
| | : | **CIVIL ACTION** |
| JOHN NIGRO | : | **NO.  08-1987** |
| | : | |

DuBOIS, J.                                                                          JULY 2, 2009

**M E M O R A N D U M**

## I.      INTRODUCTION

Petitioner John Nigro was convicted following a jury trial of one count of knowing

possession of a firearm or ammunition by a person convicted of a crime punishable by

imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  On April 28,

2008, petitioner filed the pending *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody pursuant to 28 U.S.C. § 2255.  In the motion, petitioner argues that his

attorney provided ineffective assistance of counsel at various stages of the representation—before

trial, during trial, and on appeal.  The Court concluded that one of petitioner's claims—Claim

M—warranted an evidentiary hearing, which was held on June 18, 2009.

In Claim M, petitioner argues that his counsel was ineffective in failing to advise him

regarding the then-recently decided Supreme Court case Shepard v. United States, 544 U.S. 13

(2005), and its possible implications on his sentencing exposure.  In particular, petitioner

contends that defense counsel erroneously stated that petitioner faced a fifteen-year mandatory

minimum sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), even if he

entered a guilty plea.  Based on this advice, petitioner opted to go to trial, concluding that he had

nothing to lose by doing so.  Following his conviction, however, petitioner was not sentenced as

an armed career criminal because of the unavailability of the documents required to establish three predicate violent felony convictions under Shepard.  Instead, petitioner was sentenced under the United States Sentencing Guidelines to 96 months incarceration.  Petitioner now argues that had he been properly informed regarding Shepard, he would have chosen to plead guilty and would have received a three-point reduction for acceptance of responsibility and a lower sentence.

For the reasons set forth below, the Court concludes that Claim M and petitioner's remaining claims lack merit and denies petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2004, a warrant was issued for petitioner's arrest for the burglary of a residence at 1328 Geary Street in Philadelphia, Pennsylvania on October 12, 2004.  United States v. Nigro, No. 05-CR-62, 2005 WL 2452147, at *1 (E.D. Pa. Oct. 4, 2005).  During the burglary, a safe, jewelry, and other items were taken from the residence.  Id.  The warrant was founded on an Affidavit of Probable Cause by Detective Stephen Caputo.  Id.

Petitioner fled from three encounters with police prior to his arrest on December 10, 2004.  Id.  On October 28, 2004, petitioner fled from the police on foot.  Id.  On November 30, 2004 and December 6, 2004, petitioner eluded capture by the police in an automobile, causing, on the latter day, a multi-vehicle crash.  Id.  During this time period, Detective Caputo notified the Philadelphia Police Department that petitioner was armed and had fled from the police in the past.  Id. at *2. Detective Caputo also made a wanted poster relating to petitioner that described him as possibly armed with a firearm and that warned others to use caution when attempting an

2

arrest.  Id.

On December 10, 2004, a confidential informant told the police that petitioner was at 141 Gladstone Street in Philadelphia and that he was armed with a gun.  Id.  Following a search of the named property, Detective Robert Conn located petitioner in the backyard of 137 Gladstone Street.  Id.  As Detective Conn lifted petitioner from the ground and cuffed his hands behind his back, Detective Raymond Evers picked up a green bag located on the ground next to petitioner. Id.  Based on the weight and feel of the bag, Detective Evers concluded that the bag contained a firearm.  Id.  Assisted by Detective Caputo, he opened the bag and retrieved a revolver.  At the time that the bag was opened, petitioner was fully handcuffed.  Id.

On February 8, 2005, petitioner was charged in a one-count Indictment with knowingly possessing a firearm after having been convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Petitioner's first counsel was Federal Defender Kai N. Scott, Esquire.  On March 2, 2005, Scott filed a Motion to Suppress Physical Evidence, in particular the gun and the other items seized during petitioner's arrest.  Scott filed a Supplemental Motion to Suppress Physical Evidence on April 29, 2005.  On May 26, 2005, petitioner filed a *pro se* motion to withdraw both suppression motions, which was granted on June 22, 2005.  Also on June 22, 2005, the Court granted petitioner's *pro se* Motion to Dismiss Counsel and Re-Appoint [sic] Counsel Pursuant to Title 18 U.S.C. § 3006A, dismissed Scott, and appointed Mark S. Greenberg, Esquire, to represent petitioner.  On July 28, 2005, the Court granted Greenberg's motion to reinstate the previously filed suppression motions.

3

On August 12, 2005, Greenberg moved for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), to determine whether the affidavit accompanying the arrest warrant contained deliberately reckless or false information.  On August 25, 2005, the Court denied petitioner's motion on the ground that "the slight difference between the Affidavit and Investigation Interview Record [wa]s insufficient to make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'"  Order of Aug. 25, 2005, at 4 (quoting <u>Franks</u>, 438 U.S. at 155–56).  On September 9, 2005, despite the Court's ruling, petitioner filed a *Pro Se* Motion for Hearing Pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  By Order dated September 13, 2005, the Court ruled that the government should be prepared to address the issues raised by petitioner's *pro se* motion for a <u>Franks</u> hearing at the hearing on the suppression motions scheduled for September 16, 2005.

On September 16, 2005, the Court held a hearing on all of the pending motions.  With respect to the Motions to Suppress, the government presented four witnesses:  Sergeant Raymond Evers, Detective Robert Conn, Detective Stephen Caputo, and Officer Gary Harkins.  Following the hearing, by Order dated September 16, 2005, the Court granted petitioner's *Pro Se* Motion for Hearing Pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  The Court ruled, however, that considering the Affidavit of Probable Cause with all of the evidence that petitioner stated was omitted, the inclusion of the omitted evidence was not material or necessary to the probable cause finding.  On October 3, 2005, the Court denied petitioner's Motions to Suppress.  The Court concluded that even though the bag was picked up while petitioner was being handcuffed and was searched when petitioner was fully handcuffed, the search was incident to his arrest.

4

United States v. Nigro, 2005 WL 2452147, at *5.

Petitioner's jury trial began on October 5, 2005.  Petitioner was represented at trial by Greenberg.  At trial, the government called Police Officer John Cannon as an expert witness in firearms identification.  Cannon testified that the gun seized from petitioner was manufactured by the Taurus Manufacturing Company, which is located in Brazil.  (Trial Tr. 51, 55, Oct. 6, 2005.) He also stated that, in his expert opinion, the gun was not a counterfeit.  (Id. at 56–59.)  On October 6, 2005, the jury found petitioner guilty of the sole count of the Indictment, knowing possession of a firearm or ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

In his Sentencing Memorandum, petitioner relied on Shepard v. United States, 544 U.S. 13 (2005), to argue that his base offense level should be 20 rather than 24, as calculated in the Presentence Report.  (Def. Sentencing Mem. 1–3, Mar. 30, 2006.)  In Shepard, the Supreme Court held that the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle."  544 U.S. at 15–16.  The Shepard Court also held that proof at sentencing of whether a burglary conviction involved a generic burglary is limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  Id. at 16, 26.  Petitioner argued that "the proof limitations imposed by Shepard apply equally in connection with a base offense level calculation under USSG §§ 2K2.1(a) and 4B1.2(a)(2)."  (Def. Sentencing Mem. 2.)  The government conceded in its Sentencing Memorandum that "[g]iven the state of the Philadelphia Court of

Common Pleas records of the defendant's numerous burglary convictions, the government acknowledges that [it] is unable to establish that the defendant qualifies as an armed career criminal, which would have subjected him to a 15 year statutory mandatory minimum." (Gov't Sentencing Mem. 2 n.2, Mar. 31, 2006.)

At sentencing, as the government could not prove petitioner's ACCA predicate offenses with any of the documents allowable under Shepard, the Court calculated defendant's Guidelines sentence and did not apply the fifteen-year ACCA mandatory minimum. Agreeing with petitioner's Shepard argument, the Court calculated a total offense level of 20. (Sentencing Hr'g Tr. 15–16, Apr. 7, 2006.) With a criminal history category of VI, the Guidelines range was 70 to 87 months. (Id.) The Court departed upward to impose a sentence of 96 months incarceration on the ground that petitioner's criminal history category did not adequately reflect his true criminal history. (Id. at 19–21.)

Petitioner appealed his conviction and sentence to the Third Circuit, arguing that the Court erred in denying his motions to suppress physical evidence, specifically to suppress the gun retrieved from the bag on the ground during his arrest. On February 27, 2007, in a non-precedential opinion, the Third Circuit affirmed the denial of the motions to suppress. The Third Circuit held that while the affidavit of probable cause supporting petitioner's arrest warrant was possibly flawed, "even including the information that Nigro alleges was omitted and deleting what he claims are misrepresentations does not vitiate the probable cause." United States v. Nigro, 218 F. App'x 153, 156 (3d Cir. 2007) (non-precedential). Moreover, the search of the bag found on the ground next to petitioner was "within both the temporal and geographic limitations necessary for a valid search incident to arrest." Id. at 157 (citing United States v. Myers, 308

F.3d 251, 266–67 (3d Cir. 2002)).  Petitioner filed a Petition for Certiorari to the United States

Supreme Court, which was denied on April 30, 2007.

On April 28, 2008, petitioner filed the instant Motion to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").  In the

§ 2255 Motion, petitioner contends that his counsel provided ineffective assistance.  The details

of his claims are as follows:

A.    Counsel failed to adequately prepare for and perform during the suppression
      hearing and appeals (this claim is based on petitioner's arguments in Claims B, C,
      D, E, F, G, H, I, J, K, L, and M);

B.    Counsel, after being appointed by the Court, simply had the suppression motions
      of prior counsel reinstated and failed to argue the merits of these motions;

C.    Counsel failed to accept the Court's offer of a continuance to better prepare to
      argue the merits of petitioner's *pro se* motion for a <u>Franks</u> hearing and failed to
      properly argue the merits of this motion;

D.    Counsel failed to call witnesses during the suppression hearing to testify that the
      affiant for the arrest warrant (Detective Caputo) manipulated information to
      establish probable cause or to testify that Detective Caputo knew or should have
      known that an informant was being untruthful;

E.    Counsel agreed with the Court during the suppression hearing that based on the
      statements of two witnesses, petitioner was in the Mercedes Benz at the time of
      the burglary;

F.    Counsel failed to argue that an alleged collaborator's statement to the police was
      defensive and not self-incriminating or, in the alternative, that if it was self-
      incriminating, other evidence demonstrated that the collaborator was unreliable;

G.    Counsel failed to object to testimony during the suppression hearing that wanted
      posters were distributed prior to December 10, 2004 that stated that petitioner was
      armed with a firearm;

H.    Counsel failed to object during the suppression hearing to the government
      transforming a traffic accident into a chase and escape scenario;

I.    Counsel failed to have the A.T.F. Firearm Summary Report validated and to
      submit it as evidence to demonstrate that the government failed to prove the
      element of interstate commerce;

J.    Counsel failed to seek out an expert witness to testify as to the possibility of

7

manufacturing a counterfeit firearm;

K.      Counsel failed to elicit testimony from the government's firearm expert on his lack of expertise regarding Taurus firearms and to submit the expert's curriculum vitae as proof of his lack of expertise;

L.      Counsel failed to argue on appeal that the Court erred in ruling that the search of a bag as petitioner was being handcuffed was constitutional;

M.      Counsel failed to advise petitioner regarding the effect of the then-recent Supreme Court case Shepard v. United States, 544 U.S. 13 (2005), and informed petitioner that he faced a mandatory minimum sentence of 180 months.

The Court concluded that an evidentiary hearing was necessary with respect to one of petitioner's claims—Claim M (counsel was ineffective for failing to advise petitioner regarding Shepard).  Accordingly, on February 25, 2009, pursuant to Rule 8(c) of the Rules Governing § 2255 Proceedings, the Court appointed Stephen J. Britt, Esquire to represent petitioner with respect to his § 2255 Motion.

The Court held an evidentiary hearing on Claim M on June 18, 2009 ("§ 2255 Hearing"). The government presented witness Mark S. Greenberg, petitioner's second attorney who was appointed on June 22, 2005 and represented petitioner before trial, at trial, and at sentencing. Petitioner also testified on his own behalf.  Following the conclusion of the presentation of evidence, the Court heard oral argument on Claim M and briefly addressed the other issues raised by petitioner's § 2255 Motion.

## III.   DISCUSSION

In this Memorandum, the Court will first discuss Claim M, petitioner's Shepard claim, which was the focus of the Court's evidentiary hearing.  It will then turn to petitioner's remaining arguments.

A.      **Shepard Claim**

1.      **Shepard v. United States, 544 U.S. 13 (2005)**

The Supreme Court decided <u>Shepard v. United States</u>, 544 U.S. 13 (2005), on March 7, 2005, approximately seven months before the commencement of petitioner's trial.  The case concerned the proof of predicate violent felonies for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  <u>Id.</u> at 15.  The ACCA mandates a minimum fifteen-year (180-month) sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies and "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle."  <u>Id.</u> at 15–16.  The exact question presented in <u>Shepard</u> was "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary."  <u>Id.</u> at 16.  The Supreme Court held that a sentencing court may not look to such documents and instead may rely only on "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  <u>Id.</u> at 16, 26.

Under <u>Shepard</u>, when a defendant is convicted under a non-generic burglary statute (one that defines burglary more broadly by extending it beyond buildings or enclosed spaces), the conviction may only count as an ACCA predicate offense if the government can establish, based on a document from the approved list, that the conviction involved burglary in a building or enclosed space.  The implication is that some defendants who have three prior convictions for burglary may nevertheless not qualify for the fifteen-year mandatory minimum of the ACCA.

9

### 2.        Standard for Ineffective Assistance of Counsel

The Sixth Amendment right to effective assistance of counsel attaches at the guilty plea stage and at the making of the decision whether to plead guilty.  United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 438 (3d Cir. 1982) ("[T]he decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective counsel attaches.")  The two-part standard of Strickland v. Washington, 466 U.S. 668 (1984), applies to "ineffective-assistance claims arising out of the plea process."  Hill v. Lockhart, 474 U.S. 52, 57 (1985).

"Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel."  United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. at 687).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686.  This standard requires a familiar two-part inquiry.  "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness."  Id. at 687–88.  The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms."  Id. at 687–88.  "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense."  Id. at 687.  The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

The Third Circuit has held that "a defendant has the right to make a reasonably informed

10

decision whether to accept a plea offer" and that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."  United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).  The Day court acknowledged the difficulty of articulating "what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure."  Id.  Nevertheless, "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."  Id.

### a.      Deficient Performance

In Claim M, petitioner identifies two actions (or lack thereof) by counsel that potentially constituted deficient performance.  First, petitioner contends that both of his defense attorneys—Kai Scott and Mark Greenberg—informed him that he would face the fifteen-year mandatory minimum sentence of the ACCA, regardless of whether he chose to go to trial or to plead guilty.  (Pet'r Reply 2.)  Second, petitioner argues that Greenberg failed to advise him about the then-recent decision in Shepard, which governed the question of whether his prior burglary convictions would qualify as predicate violent felonies for purposes of the ACCA.[1]  (Id.)

The testimony adduced at the evidentiary hearing supports a finding that Greenberg did not discuss Shepard with petitioner during the period when petitioner was deciding whether to go to trial or to plead guilty.  Petitioner testified that in June or July of 2005, Greenberg told him that "it would be best if [he] cooperate[d] because [he] was going to get 15 years or more."

---

[1] Shepard also affected the calculation of the base offense level pursuant to U.S.S.G. §§ 2K2.1(a) and 4B1.2(a)(2).  (Sentencing Hr'g Tr. 9–11, Apr. 7, 2006.)

11

(§ 2255 Hr'g Tr. 35–36, June 18, 2009.)  To put that statement in context, the trial began on

October 5, 2005; Shepard was decided on March 7, 2005.

Greenberg could not recall when he learned about the Shepard case or first discussed it

with petitioner.  (Id. at 9–10.)  Greenberg first mentioned Shepard to the Court in his Sentencing

Memorandum dated March 30, 2006.  He argued that Pennsylvania has a non-generic burglary

statute and that, under Shepard, the government could not prove that petitioner committed

generic burglary with the requisite documents.  (Def.'s Sentencing Mem. 1–3, Mar. 30, 2006.)

To the best of Greenberg's recollection, however, it was petitioner who called Shepard to his

attention.  (§ 2255 Hr'g Tr. 21–22.)  Petitioner confirmed Greenberg's account, testifying that in

December 2005, Greenberg filed objections to the Presentence Investigation that cited Taylor v.

United States, 495 U.S. 575, 602 (1990), an earlier Supreme Court case holding that "an offense

constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory

definition substantially corresponds to 'generic' burglary, or the charging paper and jury

instructions actually required the jury to find all the elements of generic burglary in order to

convict the defendant."  (§ 2255 Hr'g Tr. 37.)  Beginning with the citation to Taylor, petitioner

uncovered Shepard and United States v. Bennett, 100 F.3d 1105, 1109 (3d Cir. 1996), which held

that Pennsylvania's burglary statute is broader than Congress's generic definition of burglary.

(§ 2255 Hr'g Tr. 37.)  Petitioner then notified Greenberg about both Shepard and Bennett.  (Id. at

37.)  Based on this testimony, the Court finds that Greenberg and petitioner did not discuss

Shepard during the approximately seven-month interval between the date of the decision—March

7, 2005—and the commencement of petitioner's trial—October 5, 2005.

Under Day, failing to discuss the possible implications of Shepard with respect to

12

petitioner's potential sentencing exposure constituted deficient performance by defense counsel. Moreover, following Shepard, defense counsel should have reviewed the state court records to determine whether the government could prove three prior violent felony convictions that would suffice for purposes of the ACCA. To allow petitioner to make an informed, intelligent decision about whether to proceed to trial or to plead guilty, Greenberg should have advised petitioner about the Shepard decision, the documentation of his state-court convictions, and the likelihood that the government could prove the three requisite prior offenses. Failure to engage in such a discussion fell below an objective standard of reasonableness, satisfying the first prong of Strickland.

### b.    Prejudice

Petitioner argues that his counsel's deficient advice prejudiced him as, in deciding to go to trial rather than plead guilty, he forfeited the three-point reduction for acceptance of responsibility. (Pet'r Reply 3–4.) Had petitioner opted to plead guilty, he likely would have qualified for the three-point reduction of U.S.S.G. § 3E1.1, resulting in a lower sentence.

To establish prejudice, petitioner "need not prove with absolute certainty that he would have pleaded guilty, that the district court would have approved the plea arrangement, and that he therefore would have received a lesser sentence." Day, 969 F.2d at 45 n.8. Moreover, "Strickland v. Washington does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only 'reasonable probability' that that is the case." Id. (quoting Strickland, 466 U.S. at 693–94). In this context, to satisfy the prejudice inquiry, the defendant "must demonstrate that, but for his . . . attorney's alleged ineffectiveness, he would have likely received a lower sentence." United

States v. Booth, 432 F.3d 542, 547 (3d Cir. 2002).  In Booth, the court held that had defendant's

counsel informed him of the possibility of entering into an open plea, defendant may have opted

to plead guilty and "would have likely received a three-level reduction for acceptance of

responsibility.  [Defendant] was prejudiced because, by proceeding to trial and becoming

ineligible for the three-level adjustment for acceptance of responsibility, he was exposed to an

additional 19 to 30 months imprisonment."  Id. at 548–49.  Accordingly, the defendant could

demonstrate prejudice.  Id. at 549; accord Day, 969 F.2d at 44; United States v. Day, 285 F.3d

1167, 1172 (9th Cir. 2002).

 Petitioner did not present any objective evidence supporting his claim that he would have

pleaded guilty had counsel properly advised him concerning the possible effects of Shepard on

his sentencing exposure.  Petitioner testified to this effect, but the Court does not find this

testimony credible.

 Petitioner's counsel asked the following question at the § 2255 Hearing:  "If in fact you

had known that the 15 years might not have been on the table that you were going to get a

[G]uideline[s] sentence what would you have done?"  (§ 2255 Hr'g Tr. 36–37.)  Petitioner

responded that he would have pleaded guilty.  (Id. at 37.)  Defense counsel, however, could never

have advised petitioner that he would definitely have received a Guidelines sentence had he

pleaded guilty.  At most, defense counsel could have said that as of the time of his most recent

investigation of the state court records, he did not find the kind of documentation that would

allow the government to prove three predicate violent felony convictions under Shepard.  If the

government could not establish that petitioner qualified under the ACCA, then he would be

sentenced instead under the Guidelines.  Defense counsel, however, could have made no

14

guarantees about what the government could unearth concerning petitioner's state court convictions between the time of the guilty plea and sentencing.  Significantly, petitioner did not testify that he would have pleaded guilty with this understanding of the operation of Shepard, the records of his state-court convictions, and the fact that he might be subjected to a mandatory minimum of sentence of fifteen years with a guilty plea under those circumstances.

Petitioner also argues that his willingness to proffer with the government demonstrates that he was open to entering into a guilty plea.  Petitioner testified that he attended one proffer session in March 2005 with Federal Defender Scott.  (Id. at 32.)  At that session, according to petitioner, the government asked him to cooperate in exchange for a possible motion for a downward departure from the fifteen-year mandatory minimum.  (Id. at 34).  Petitioner's response was that he did not "want to tell on anybody," which ended the proffer session.  (Id. at 34–35.)  The fact that petitioner attended a proffer session, even when viewed in light of petitioner's other testimony, does not establish a "reasonable probability" that petitioner would have pleaded guilty had he been informed about Shepard.  Petitioner's consideration of a non-trial disposition at a proffer session is not sufficiently probative to demonstrate prejudice.

For all of the reasons discussed above, petitioner did not meet his burden to establish that he was prejudiced by the deficient performance of defense counsel and, accordingly, did not satisfy the second prong of Strickland.  Thus, petitioner's Claim M is rejected.

## B.    Petitioner's Remaining Claims

For the reasons discussed *infra*, the Court concludes that petitioner's Claims A–L also lack merit.  The Court will briefly explain its reasons for rejecting Claims A–L.

**Claim A:**  Counsel failed to adequately prepare for and perform during the suppression

hearing and appeals (this claim is based on petitioner's arguments in Claims B, C, D, E, F, G, H, I, J, K, L, and M).  Claim A is an overarching claim that incorporates petitioner's arguments in Claims B–M but does not posit an independent ground for granting the writ.  As such, it is merely cumulative and can be rejected without any prejudice to petitioner.

**Claim B:**  Counsel, after being appointed by the Court, simply had the suppression motions of prior counsel reinstated and failed to argue the merits of these motions.  This claim is belied by the record.  The Motion to Reinstate Motion to Suppress Physical Evidence filed on July 27, 2005 stated that petitioner "has reviewed these motions [to suppress] with new counsel and agrees that they should be reinstated."  Moreover, counsel filed his own Motion for a Hearing Pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), on August 12, 2005.  This motion was denied on August 25, 2005, after which petitioner filed a *pro se* motion for a <u>Franks</u> hearing.  At the suppression hearing on September 16, 2005, counsel fully argued the merits of the suppression motions and of petitioner's *pro se* <u>Franks</u> motion.  Counsel's performance with respect to these motions was reasonable and not deficient.  Claim B is rejected.

**Claim C:**  Counsel failed to accept the Court's offer of a continuance to better prepare to argue the merits of petitioner's *pro se* motion for a <u>Franks</u> hearing and failed to properly argue the merits of this motion.  At the suppression hearing on September 16, 2005, the Court offered counsel more time to prepare to address the issues raised by petitioner's *pro se* motion for a <u>Franks</u> hearing.  (Suppression Hr'g Tr. 2, Sept. 16, 2005.)  Counsel stated that he was ready to proceed.  (<u>Id.</u> at 3–4.)  Upon questioning by the Court, petitioner agreed to have counsel argue for him and stated that he was satisfied with counsel's representation.  (<u>Id.</u> at 5.)  The transcript of the hearing demonstrates that counsel was fully prepared to argue both the law and the facts of

the Franks motion.  (See, e.g., id. at 5–14, 23–29.)  Claim C is rejected.

**Claim D:**  Counsel failed to call witnesses during the suppression hearing to testify that the affiant for the arrest warrant (Detective Caputo) manipulated information to establish probable cause or to testify that Detective Caputo knew or should have known that an informant was being untruthful.  Calling witnesses to adduce such testimony was unnecessary as the requisite evidence was placed in the record in the form of the arrest warrant affidavit, police reports, and witness statements.  (Id. at 15–16.)  To rule on the Franks motion, the Court "add[ed] to the affidavit the facts that [petitioner] sa[id] were not included."  (Id. at 30.)  Reviewing the modified affidavit, the Court concluded that the additions and inconsistencies did not vitiate probable cause.  (Id. at 31–32.)  As the Court considered all of the omitted and inconsistent facts, the failure to call witnesses did not prejudice petitioner.  Claim D is rejected.

**Claim E:**  Counsel agreed with the Court during the suppression hearing that based on the statements of two witnesses, petitioner was in the Mercedes Benz at the time of the burglary.  Counsel's concession did not prejudice petitioner.  Counsel vigorously attacked the credibility of those witnesses, pointing out the inconsistencies in their statements and arguing that one of the witnesses was implicated in the crime and had a motive to fabricate.  (Id. at 12–13.)  Moreover, the Court did not rely on counsel's concession in reaching its conclusion.  Accordingly, Claim E is rejected.

**Claim F:**  Counsel failed to argue that an alleged collaborator's statement to the police was defensive and not self-incriminating or, in the alternative, that if it was self-incriminating, other evidence demonstrated that the collaborator was unreliable.  As discussed *supra*, counsel challenged the collaborator's credibility during the suppression hearing, arguing that he was an

17

interested witness who had a motive to fabricate or falsify.  (<u>Id.</u> at 12–16.)  Moreover, to the

extent that this argument relies on the Federal Rules of Evidence, it is without merit as the

Federal Rules of Evidence do not apply to "[t]he determination of questions of fact preliminary

to admissibility of evidence when the issue is to be determined by the court . . . ."  Fed. R. Evid.

1101(d)(1).  Claim F is rejected.

**Claim G:**  Counsel failed to object to testimony during the suppression hearing that

wanted posters were distributed prior to December 10, 2004 that stated that petitioner was armed

with a firearm.  **Claim H:**  Counsel failed to object during the suppression hearing to the

government transforming a traffic accident into a chase and escape scenario.  Failure to make

these objections did not prejudice petitioner as this evidence was cumulative.  The government

presented evidence that the police had a tip from a confidential informant that petitioner had a

gun in his possession on the day of his arrest.  (Suppression Hr'g Tr. 44, 60, 76.)  A government

witness also testified that petitioner had evaded arrest three times; two of those incidents were

prior to the traffic accident that is the subject of Claim H.  (<u>Id.</u> at 71–72.)  Accordingly, even if

counsel had objected to the statements complained of by petitioner and they had been omitted,

the government presented sufficient evidence to establish that the police had reason to believe

that petitioner was armed and dangerous.  Claims G and H are rejected.

**Claim I:**  Counsel failed to have the A.T.F. Firearm Summary Report validated and to

submit it as evidence to demonstrate that the government failed to prove the element of interstate

commerce.  Despite petitioner's claims to the contrary, the admission of the A.T.F. Firearms

Trace Summary would not have disproven the element of interstate commerce as it discloses that

the firearm was manufactured in Brazil.  (A.T.F. Firearms Trace Summary, Ex. C to Pet'r Mem.

of Law in Support.)  To establish a violation of 18 U.S.C. § 922(g)(1), the government must

prove that a person "who has been convicted in any court of, a crime punishable by

imprisonment for a term exceeding one year . . . ship[ped] or transport[ed] in interstate or foreign

commerce, or possess[ed] in or affecting commerce, any firearm or ammunition; or . . .

receive[d] any firearm or ammunition which has been shipped or transported in interstate or

foreign commerce."  The A.T.F. Firearms Trace Summary only bolsters the government's case

that petitioner possessed or received a firearm that had been "shipped or transported in interstate

or foreign commerce."  Id.  Accordingly, counsel's decision not to have the A.T.F. Firearms

Trace Summary validated and admitted into evidence was reasonable and constituted effective

assistance of counsel.  Claim I is rejected.

   **Claim J:**  Counsel failed to seek out an expert witness to testify as to the possibility of

manufacturing a counterfeit firearm.  At trial, the government's firearms expert, Police Officer

John Cannon, testified that the gun was stamped "Made in Brazil."  (Trial Tr. 55, Oct. 6, 2005.)

Moreover, when asked on cross examination whether there was other evidence tending to show

that the gun was made in Brazil, he testified that his opinion was based on "the whole series of

stamps and where they are [which] is something that I recognize that it's done in such a pattern

and such a quality—a pattern that I recognize through seeing literally thousands of Taurus

firearms."  (Id.)  When asked if the gun could possibly be counterfeit, he responded that he had

never encountered a counterfeit firearm and that the gun in question was "a professionally-made

firearm."  (Id. at 56.)  Petitioner has not presented evidence that an expert would have testified

that the gun at issue was counterfeit.  Moreover, given the weight of the government's evidence,

testimony about the theoretical possibility of a counterfeit gun would not have sufficiently

19

undermined the government's proof that the gun had traveled in interstate or foreign commerce. Counsel's decision not to call an expert witness to testify about counterfeit firearms was reasonable and constituted effective assistance.  Claim J is rejected.

        **Claim K:**  Counsel failed to elicit testimony from the government's firearms expert on his lack of expertise regarding Taurus firearms and to submit the expert's curriculum vitae as proof of his lack of expertise.  On cross examination, the government's firearms expert, Police Officer John Cannon, stated that he had seen "literally thousands of Taurus firearms."  (Trial Tr. 55, Oct. 6, 2005.)  Based on this statement, Officer Cannon did not lack expertise regarding Taurus firearms.  Counsel's decision not to question Officer's Cannon expertise was reasonable and constituted effective assistance.  Claim K is rejected.

        **Claim L:**  Counsel failed to argue on appeal that the Court erred in ruling that the search of a bag as petitioner was being handcuffed was constitutional.  The decision of the Court of Appeals belies this claim.  The Third Circuit wrote that petitioner "also claims that even if the arrest warrant was supported by probable cause, the search of the bag was not within the scope of a search incident to arrest."  United States v. Nigro, 218 F. App'x 153, 156 (3d Cir. 2007) (non-precedential).  Moreover, the Court of Appeals expressly ruled on this claim, holding that the "search was proper, even though [petitioner] was actually handcuffed when the bag was opened." Id. at 157 (citation omitted).  Claim L is rejected.

## IV.    CERTIFICATE OF APPEALABILITY

        In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of

constitutional rights." <u>Morris v. Horn</u>, 187 F.3d 333, 340 (3d Cir. 1999); <u>see also</u> 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.")  The Court concludes that petitioner has not made such a showing.  Thus, the Court will not issue a certificate of appealability.

**V.     CONCLUSION**

    For all of the aforementioned reasons, petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is denied.